UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LILBERT HARRIS GREGORY,

    Plaintiff,

v.

M.D.O.C. et al.,

    Defendants.

_____/

Civil Action No. 23-11957

Laurie J. Michelson
United States District Judge

David R. Grand
United States Magistrate Judge

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS BOMBER, BRYANT, GRAND PRAIRIE, AND WELLPATH'S MOTION FOR SUMMARY JUDGMENT [34] AND DEFENDANT WELLPATH'S MOTION TO DISMISS [57]**

Lilbert Gregory, a Michigan state prisoner, suffers from Stage IV cancer. He had been prescribed oxycontin (an opioid) to treat his severe pain. Gregory's prescription was stopped, however, when a random ("instant") urine test he was administered on July 20, 2023, was negative for opioids but positive for THC. (ECF No. 1.) Gregory insisted that further testing would show the urine test was inaccurate. (*Id.* at PageID.17.) A guard told him that the prison "still [has] to send all instant test[s] out to the lab because these instant test kits are not 100% [re]liable" and that he would receive "the accurate results within 14 days." (*Id.*)

Gregory alleges that he never heard anything about the outside lab test results; that he repeatedly complained of being in excruciating pain without the oxycontin[1]; and that he asked that his "due process rights" to the lab testing "play

---

[1] Gregory's medical records corroborate these allegations. (*E.g.*, ECF No. 34-1, PageID.384 ("Patient reporting medication compliance, states the urine was a 'false

out" by "waiting on lab result[s] for the exact findings" before discontinuing his prescription pain medication. (*Id.* at PageID.18–19.) A few weeks later, Gregory alleges that when he asked a guard why he hadn't received a substance abuse misconduct, he was told, "I take it you were right [and that] the test kit had to be incorrect." (*Id.* at PageID.20.)[2] Gregory was then given his oxycontin prescription back, but filed this lawsuit because he claims to have suffered extreme pain in the interim 33-day period that he was without that medication. (*Id.* at PageID.21.) Gregory claims that Defendants knew that taking him off the oxycontin "cold turkey" would cause him to suffer "server [sic] pain and suffering." (*Id.* at PageID.18, 20.)

The remaining[3] named defendants in this case are Wellpath, LLC and Grand Prairie Healthcare Services, P.C., and their medical provider employees who treated Gregory, Jeffrey Bomber, D.O. and Krystal Bryant, N.P. (all together, the "Wellpath Defendants"). Gregory asserts claims for deliberate indifference to his serious medical

---

positive' and he is requesting a blood test."), PageID.386 ("You now im [sic] stage IV and terminal but you refuse to give me my pain medication. not investigating that the test kit could have been defected [sic]. this is why the box says 74% but yet you continue to let me suffer in pain daily. per policy you do not cut a person off cold you are to wing [sic] them off."), PageID.391 ("I have not been to sleep in 5 days my bones, my pelvis/stomach is so bad with pain, you are suposed [sic] to help me not be a vigilante how can you not give a person with stage IV cancer terminal nothing for pain?").)

[2] In a later filing, Gregory contends that on August 3, 2023, the lab test came back negative for THC but positive for opioids, just as he had said it would. (ECF No. 40, PageID.557.)

[3] Gregory also named as defendants the Michigan Department of Corrections, the G. Robert Cotton Correctional Facility, and various MDOC employees. However, Gregory's claims against those defendants have either been dismissed (ECF No. 6) or recommended for dismissal in a Report and Recommendation (ECF No. 51).

needs in violation of his rights under the Eighth Amendment and also a violation of his due process rights under the Fourteenth Amendment. (*Id.* at PageID.16.)

Presently before the Court are two dispositive motions. First, on September 20, 2024, the Wellpath Defendants filed a motion for summary judgment. (ECF No. 34.) Gregory filed a response (ECF No. 40), and the Wellpath Defendants filed a reply (ECF No. 43). Second, on June 18, 2025, Wellpath filed a "Motion to Dismiss Based on Bankruptcy Discharge and Confirmation Order." (ECF No. 57.) Gregory filed a response to that motion on July 10, 2025, although it was not docketed until August 7, 2025. (ECF No. 60.)

Previously, this case had been referred to the assigned magistrate judge for all pretrial matters. (ECF No. 14.) However, on August 25, 2025, this Court rescinded the Order of Reference. (ECF No. 61.) For the reasons below, the Court finds that additional information regarding the Wellpath Defendants and their relationship to each other, as well as the impact of the bankruptcy proceedings on Gregory's claims against them, is needed before it can properly resolve the pending motions. Accordingly, the Court will deny both motions without prejudice and give the Wellpath Defendants and Gregory an opportunity to brief those issues in more detail.

## I. The Wellpath Defendants

The relationship between the Wellpath Defendants is not entirely clear. At all times relevant to this litigation, it appears that Wellpath was "contracted with the Michigan Department of Corrections to staff physician and mid-level medical providers at the various correctional facilities operated by the MDOC." (ECF No. 49,

3

PageID.641.) During that same time, Wellpath "subcontracted the entire [MDOC] contract to Grand Prairie Healthcare Services P.C." (*Id.* at PageID.642.) Finally, "[d]uring the timeframe relevant to [Gregory's] Complaint, Defendant Bryant[,] . . . a mid-level provider, and Dr. Bomber, a physician[,] were employed by Wellpath, LLC/Grand Prairie to provide medical care to the inmates at G. Robert [Cotton] Correctional Facility." (*Id.*)

Bryant and Bomber contend that "[a]s part of their employment [they] were promised complete defense and indemnity coverage for any lawsuits arising from . . . their employment with Wellpath, LLC." (*Id.*)[4] Grand Prairie claims that it "functioned as a subsidiary of Wellpath, LLC and was also contractually entitled to complete defense and indemnity for any claims arising out of the MDOC contract." (*Id.*)

## II. The Wellpath Bankruptcy

On November 18, 2024, the Wellpath Defendants filed a "Suggestion of Bankruptcy and Notice of Stay." (ECF No. 44.) The filing advised that Wellpath had filed a Voluntary Petition for Non-Individuals Filing Bankruptcy seeking Chapter 11 relief in the United States Bankruptcy Court for the Southern District of Texas. (*Id.* at PageID.576.) The Wellpath Defendants also represented that the Bankruptcy Court entered an Amended Interim Order Enforcing the Automatic Stay, pursuant

---

[4] The individual defendants' employer is unclear. On the one hand, Bryant and Bomber assert that they were employed by "Wellpath, LLC/Grand Prairie," while in the very next sentence they assert that they were employed by "Wellpath, LLC." (ECF No. 49, PageID.642.)

4

to which this action was "stayed in its entirety, including as to [Gregory's] claims against the non-Debtor defendants." (*Id.* at PageID.578.)

On January 24, 2025, those "non-Debtor" defendants—Grand Prairie, Bryant, and Bomber—filed a "Motion to Extend Bankruptcy Stay to Non-Debtor Defendants." (ECF No. 49.) Chief Magistrate Judge Grand granted that motion on March 11, 2025. (ECF No. 52.) A few months later, on June 11, 2025, the magistrate judge held a telephonic status conference and the Wellpath Defendants' counsel advised that the bankruptcy proceedings had concluded such that a stay of this case was no longer necessary. (*See* Minute Entry, June 11, 2025.) Thus, on that same day, the magistrate judge lifted the previously entered stay. (*Id.*)

### III. Wellpath Defendants' Motion for Summary Judgment (ECF No. 34)

In their motion for summary judgment, the Wellpath Defendants argue that: (1) Bryant was not involved in the decision to discontinue Gregory's oxycontin prescription; (2) Bomber merely exercised his medical judgment in discontinuing that prescription, and Gregory lacks the medical evidence necessary to substantiate his deliberate indifference claim; (3) Wellpath/Grand Prairie are not liable because Gregory fails to identify any policy, practice, or custom of theirs that violated his constitutional rights; and (4) Gregory failed to specifically name Bryant and Bomber in his salient grievance. (ECF No. 34.)

### IV. Wellpath's Motion to Dismiss (ECF No. 57)

One week after the magistrate judge lifted the stay, Wellpath only filed a "Motion to Dismiss Based on Bankruptcy Discharge and Confirmation Order." (ECF

No. 57.) In that motion, Wellpath asserts that the "Confirmation Order [] [in the bankruptcy case] provides for a discharge, release, and injunction of all claims arising prior to the effective date of the plan" and that "[Gregory's] claims, as pled in this lawsuit, are based on alleged conduct that arose prior to the bankruptcy plan's effective date and are thus barred by operation of 11 U.S.C. §§ 1141 and 524 and the terms of the Plan and Confirmation Order." (*Id.* at PageID.689.) Wellpath asserts that the bankruptcy court "approved a comprehensive resolution of all claims" when it determined that "**the provisions of the Plan shall also constitute a good faith compromise and settlement of those Claims, Causes of Action, and controversies incorporated in the Plan and are hereby approved**." (*Id.* at PageID.696 (emphasis in original) (quoting ECF No. 57-1, PageID.728).) And Wellpath asserts that the bankruptcy court found that:

> each of the injunction, exculpation, release, indemnification, discharge, settlement, and compromise provisions set forth in the Plan [] are (i) the product of extensive good faith and arm's-length negotiations, (ii) fair, equitable, reasonable, and appropriate under the circumstances, (iii) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors, (iv) essential, integral, and nonseverable components of the Plan, Consummation, and resolution of the Chapter 11 Cases, (v) appropriately and narrowly tailored, (vi) supported by good and valuable consideration (including the Released Parties' contributions to facilitate the resolution of the Chapter 11 Cases and implementation of the Plan), (vii) granted after due notice and opportunity for hearing, (viii) consistent with the Bankruptcy Code and applicable law [], (ix) intended to promote finality and prevent parties from circumventing or attempting to circumvent the Plan, (x) supported by the Debtors and their key stakeholders, including the Ad Hoc Group, (xi) constitute good faith compromises and settlements of the matters covered thereby, (xii) with respect to the injunction provisions, necessary to preserve and enforce the Plan's discharge, release, and exculpation provisions, and (xiii) are the result of a fair and valid exercise of the Debtors' business judgment.

6

(*Id.* at PageID.696–697 (quoting ECF No. 57-1, PageID.715).)

Wellpath also discusses the bankruptcy court's findings that:

> The Third-Party Release is supported by good and valuable consideration, consensual as to all relevant parties, including all Releasing Parties, and such parties (i) were provided notice of the Chapter 11 Cases, the Plan, the deadline to object to Confirmation of the Plan, and the scheduled Confirmation Hearing, (ii) received the Confirmation Hearing Notice, a Ballot, and/or the Non- Voting Status Notice, and (iii) were properly informed that any Holder of a Claim against or Interest in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form or otherwise objected to the Third-Party Release, returned in advance of the Voting Deadline (or within 60 days after the Confirmation Date for incarcerated individuals), would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Non-Voting Status Notice, the Confirmation Hearing Notice, and the Opt Out Form.

(*Id.* at PageID.698 (quoting ECF No. 57-1, PageID.716).)

Wellpath makes a general assertion, without any attached support, that "Plaintiff's failure to timely object or opt out does not preserve their [sic] claims." (*Id.* at PageID.699.) Finally, Wellpath concludes by asserting that "Federal courts— including those in the Sixth Circuit—routinely enforce bankruptcy confirmation orders as final judgments entitled to full preclusive effect." (*Id.*)

## V. Discussion

Wellpath's motion to dismiss leaves some unanswered questions that should be clarified before the Court rules on it or the Wellpath Defendants' motion for summary judgment.

7

First, Wellpath's motion to dismiss does not contain sufficient information for the Court to determine whether Gregory did indeed fail to object or opt out of the bankruptcy plan. No affidavits are provided by people able to answer those questions, nor is any other evidence attached that might answer them. Thus, even as to Gregory's claims aimed directly at Wellpath, the Court finds that further clarification is required.

Second, while the motion to dismiss is filed solely on behalf of "Wellpath," it appears to make multiple references to legal issues germane to the other Wellpath Defendants and to protections that may apply to them. To that end, the Court notes that the magistrate judge previously granted the Wellpath Defendants' "Motion to Extend Bankruptcy Stay to Non-Debtor Defendants," which was based on the bankruptcy court's finding that individuals such as Byrant and Bomber were entitled to at least certain relief on account of Wellpath's bankruptcy filing. (ECF Nos. 49, 49-1, 52.)

Third, Wellpath's motion to dismiss broadly references "Plaintiff's claims" and "all claims," and links them to "alleged conduct that arose prior to the bankruptcy plan's effective date," while Wellpath's main summary judgment argument is that Gregory accuses it of no wrongful conduct whatsoever but rather is attempting to assert *respondeat superior* liability against it. (ECF No. 57, PageID.689.)

At this point, therefore, and on the current record before the Court, it is unclear whether Wellpath is asserting that Gregory's claims against Grand Prairie, Bryant, and Bomber were compromised as part of the bankruptcy plan and/or whether

8

Wellpath retained indemnity responsibility for any claims that may remain. The Court believes it should have a clearer understanding of the parties' positions as to those issues and the impact, generally, of the bankruptcy resolution on Gregory's claims in this case before ruling on Wellpath's motion to dismiss and the Wellpath Defendants' summary judgment motion. For instance, if Gregory opted in or out of the plan or if he submitted any objection to the plan, there should be supporting documentation. Or those responsible for administering the plan or its resolution, should be able to provide this information.

## VI. Conclusion

For the above reasons, IT IS ORDERED that Wellpath's motion to dismiss (ECF No. 57) is DENIED WITHOUT PREJUDICE. Wellpath may re-file this motion within 30 days and shall address the issues raised above. The Wellpath Defendants' motion for summary judgment (ECF No. 34) is also DENIED WITHOUT PREJUDICE. If Gregory's claims survived the resolution of the Bankruptcy proceedings and any Wellpath Defendants are not part of any renewed motion to dismiss, they too may refile their motion for summary judgment.

Dated: August 26, 2025

                                                 s/Laurie J. Michelson  
                                                 LAURIE J. MICHELSON  
                                                 UNITED STATES DISTRICT JUDGE